# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SARAH IRENE DAVIS,

    Plaintiff,

v.                                                                15cv309 JCH/WPL

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Sarah Davis applied for supplemental security income on April 8, 2011, alleging disability beginning on May 30, 2002, from "Bipolar, anxiety, PTSD, Chromes Disease, Depression" [sic]. (Administrative Record "AR" 129, 146, 150.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me on her Fact and Law Summary, which was filed in the Western District of Kentucky and later transferred to this District; a response filed by the Commissioner of the Social Security Administration ("SSA"); and Davis's reply. (Docs. 13, 16, 30, 31.) For the reasons explained below, I recommend that the Court grant Davis's motion and remand this case to the SSA.[2]

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of the Social Security Administration, is substituted for Acting Commissioner Carolyn W. Colvin under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Before moving to Kentucky, Davis lived in Albuquerque, N.M., where the hearing was held. Neither party has argued that Sixth Circuit law is different from Tenth Circuit law on the issues presented. Accordingly, I have applied Tenth Circuit law to resolve this appeal.

## STANDARD OF REVIEW

In reviewing the Administrative Law Judge's ("ALJ") decision, the Court must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). The Court must meticulously examine the record, but it may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments,

then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. § 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Davis is forty-six years old. (AR 146.) She has a high school education and previously worked as a "Laborer" at a restaurant. (AR 151.)

I do not address everything in the record but rather target my factual discussion to those facts necessary to the disposition of this case.

Davis states that she stopped working in 1990 because of her conditions. (AR 150.) Though the relevant period of disability began in 2011, she reported being diagnosed with bipolar disorder in 2002 and undergoing a psychiatric admission to the hospital in 2008. (AR 337, 339.)

In 2011, Davis saw Jeremy Edmonds, D.O., who the ALJ later classified as a treating physician (*see* AR 28), six times between February and May to obtain medications and treatment for depression, anxiety, sleep issues, and skin issues, among others. (*See* AR 285-300.) Dr. Edmonds noted during the March 28, 2011, visit that "in my medical opinion . . . she is unable to work due to mental disease" and referred Davis to "[V]alencia [C]ounseling." (AR 300.)

On April 14, 2011, Davis underwent an Initial Evaluation at Valencia Counseling. (AR 388-403.) Barbara Rattenborg, LSW, noted that Davis "reports symptoms of [b]ipolar and domestic violence with husband. [Davis] currently living with Grandmother, but reports he continues to harass her." (AR 388.)

On July 2, 2011, Melanie Marie Falgout, M.D., performed a consultative examination (AR 337-340) and concluded that "[w]ith regard to the multiple psychiatric evaluations, no findings on exam other than that she mentated somewhat slowly and appeared to be very nervous" (AR 340).

On July 29, 2011, Mary S. Loescher, Ph.D., performed a consultative examination (AR 342-345) and concluded that Davis had two severe workplace limitations—"her ability to understand, remember and follow through on basic work instructions" and "her ability to manage stress in the workplace and to interact with co[-]workers and the general public" (AR 344).

Two non-examining state agency medical consultants later reviewed Davis's file and concluded that she was capable of unskilled work. (*See* AR 48-50 (RFC from Linnette Castillo, Psy.D., completed on August 30, 2011); AR 60-62 (RFC from Barbara Lewis, Ph.D., completed on December 27, 2011).)

## ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on April 18, 2013. (AR 30.) At step one, she determined that Davis had not engaged in substantial gainful activity since January 31, 2011. (AR 24.) At step two, the ALJ determined that Davis had "the following severe impairment: affective disorder." (*Id.*) At step three, the ALJ concluded that Davis did not have an impairment or combination of impairments that met or medically equaled anything in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 25.)

The ALJ noted that Davis had mild restriction in activities of daily living, mild difficulties in social functioning, moderate limitations in concentration, persistence, or pace, and "no episodes of decompensation that have been of extended duration." (AR 25-26.)

At phase one of step four, the ALJ determined that Davis had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple, repetitive tasks working primarily with things rather than people." (AR 26.) In making this determination, the ALJ gave "great weight" to the opinion of Dr. Falgout (AR 24), "little weight" to the opinion of Dr. Edmonds (AR 28), "little weight" to the opinion of Dr. Loescher (AR 29), and "great weight" to the opinions of the "State agency psychological consultants." (*Id.*) At phase two of step four, the ALJ found that Davis had no past relevant work. (*Id.*)

Proceeding to step five, the ALJ used the Medical-Vocational Guidelines ("Grids") to conclude that Davis could perform jobs existing in significant numbers in the national economy and was not disabled. (AR 29-30.) The Appeals Council denied Davis's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Davis raises four issues for review: (1) whether the ALJ's RFC is supported by substantial evidence; (2) whether the ALJ committed legal error when evaluating Dr. Loescher's opinion; (3) whether the ALJ properly applied the Grids at step five; and (4) whether the ALJ's credibility finding contains legal error. (*See* Doc. 13 at 1-2 (summarizing arguments).) I find error in issue (2)—the ALJ's evaluation of Dr. Loescher's opinion—and therefore do not reach the other issues, because the ALJ may need to re-assess other parts of her analysis on remand.

Dr. Loescher is a consultative examiner, which means the ALJ must evaluate her opinion using the following six factors in 20 C.F.R. § 416.927(c): (1) the examining relationship; (2) the treatment relationship, including the length and nature of the relationship; (3) the supportability of the findings; (4) the consistency of the opinion "with the record as a whole"; (5) her status as a specialist; and (6) other factors that tend to support or contradict the opinion. Even though the C.F.R. lists six factors, the ALJ need not discuss each factor, because "not every factor . . . will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted). If an ALJ rejects an opinion, she "must provide specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation and citation omitted).

The ALJ discounted Dr. Loescher's opinion—and therefore did not account for the two severe limitations in the RFC—by applying C.F.R. factors (2), (3), and (6). (*See* AR 28-29.) Applying factor (2), the ALJ noted that Dr. Loescher's "opinion was based on only one examination." (AR 29.) Applying factor (3), the ALJ noted that Dr. Loescher's finding that Davis had two severe limitations was contradicted by other findings in her opinion—specifically,

6

that "the claimant was alert and oriented to time, place, and person with articulate and clear speech and she did not describe symptoms associated with dissociative disorder such as loss of time, depersonalization, or de-realization nor psychotic symptoms such as auditory or visual hallucinations." (*Id.*) And applying factor (6), the ALJ noted that Dr. Loescher "relied a great deal on the claimant's statements." (*Id.*)

Further examining the ALJ's analysis, however, reveals that these justifications are not legitimate, and the ALJ committed legal error by relying on them. *Chapo*, 682 F.3d at 1291.

Regarding factor (2), two things undermine the ALJ's single-visit rationale: (1) Dr. Loescher based her opinion in part on her review of "Information [P]rovided by Disability Determination Services Medical Records" (AR 342), which means her conclusions were not taken from one snapshot in time, as the ALJ asserts; and (2) the Tenth Circuit recently expressed doubt about the viability of the single-visit rationale to discount a consultative examiner's opinion, *see Kellams v. Berryhill*, --- F. App'x ---, ---, 2017 WL 2874506, at *7 (June 23, 2017) (unpublished) ("The ALJ gave the [consultative examiner's] report little weight, in part, because [the consultative examiner] examined [the claimant] only once. This rationale may justify refusing to give [the consultative examiner] the status of a treating physician and according her opinion controlling weight, but as an examining source her opinion still was entitled to particular consideration.").

Regarding factor (3), Dr. Loescher's opinion does not contain the supposed internal contradictions the ALJ cites. Compare the following: Dr. Loescher noted that Davis would be "severely impaired in her ability to understand, remember and follow through on basic work instructions" and "severely impaired in her ability to manage stress in the workplace and to interact with coworkers and the general public" (*id.*)—which are limitations related solely to the

7

workplace—while the supposed internal contradiction is that Davis had an alert mental state and lack of disassociative issues (AR 29)—which are broader findings that do not preclude the more specific workplace limitations. Stated more simply, Davis can be mentally oriented and free of hallucinations yet still have severe limitations in her ability to follow workplace instructions and interact with others.

Lastly, regarding factor (6), the ALJ's conclusion that Dr. Loescher relied too heavily on Davis's subjective statements to find the two severe limitations is incorrect. Reviewing Dr. Loescher's findings in context reveals that the limitations were medical conclusions. The excerpt below includes findings both before and after the discussion of the severe limitations to better put the severe limitation findings in context:

> According to her step grandmother, she lost custody of her children because of violent behavior. She would be severely impaired in her ability to understand, remember, and follow through on basic work instructions. This is based on her inability to understand some questions during this interview and her extreme emotional lability. She would be severely impaired in her ability to manage stress in the workplace and to interact with co[-]workers and the general public. She may need assistance in managing her finances.

(AR 344.) Two sentences in this excerpt are instructive—the first sentence about the step grandmother—which reveals that Dr. Loescher will attribute a subjective statement to the speaker when applicable—and the third sentence sandwiched between the two severe impairment findings—which reveals that Dr. Loescher did not parrot-back Davis's subjective complaints but instead relied on Davis's communication challenges during the examination to craft the two severe workplace impairments.

Given that the ALJ's three reasons for discounting Dr. Loescher's opinion are not legitimate, the ALJ committed reversible error under *Chapo* by rejecting it.

8

## CONCLUSION

The ALJ committed legal error by discounting Dr. Loescher's findings without citing legitimate reasons under the six evaluative factors listed in 20 C.F.R. § 416.927(c). I recommend the Court remand the case and instruct the ALJ to provide legitimate reasons under the C.F.R. when considering Dr. Loescher's opinion on remand.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
William P. Lynch
United States Magistrate Judge